IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BENJAMIN ALBERT,                         )
                                         )
Plaintiff,                               )
                                         )          CASE NO:_____
v.                                       )
                                         )
                                         )
                                         )
TINDER, INC.;                            )
MATCH GROUP, INC.;                       )
FACEBOOK, INC.;                          )
META PLATFORMS, INC., d/b/a META;        )
DOES 1 – 100 inclusive,                  )
                                         )
Defendants                               )

```
FILED BY_____D.C.

MAR - 7 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.
```

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, BENJAMIN ALBERT, ("Plaintiff" or "ALBERT") alleges as follows:

**JURISDICTION AND VENUE**

1.   The claims asserted herein arise under and pursuant to 15 U.S.C. §1125; the Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

2.   Venue is proper in this judicial district pursuant to 28 U.S. Code §1391 as Plaintiff is informed and believes that a substantial part of the events occurred in Broward County.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**PARTIES**

3.    Plaintiff is an individual, and a citizen of the state of
Florida, and resides in Broward County.

4.    Plaintiff is informed and believes and on that basis
alleges that at all relevant times mentioned herein Defendant Meta
Platforms, Inc. formerly Facebook, Inc. ("Facebook") has its
principal place of business located in the State of California.

5.    Plaintiff is informed and believes and on that basis
alleges that at all relevant times mentioned herein Defendant Tinder
("Tinder") has its principal place of business in the State of
California. Parent MATCH GROUP, INC. ("Match") has principal place of
business in Texas.

6.    Plaintiff is unaware of the true names of those Defendants
herein sued as DOES 1 through 100, inclusive, and will amend this
Complaint to state their true names if and when the same have been
ascertained.

**GENERAL ALLEGATIONS**

7.    Plaintiff Benjamin Albert is a tech entrepreneur, developer
and is the sole proprietor and sole member of Billenial ISA,
registered in 2017. Beginning 2022 he began to further education at
University.

8.    Defendant, Facebook owns the registered social media domain
www.facebook.com, and pursuant thereto, the fake accounts and their
respective Facebook "Groups" leveraging Plaintiff's name and
likeness.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

9.    Defendant Tinder operates the mobile dating application
"Tinder" and the domain www.Tinder.com, email help@Tinder.com, and
pursuant thereto the Fake account leveraging Plaintiff's name and
likeness.

10.   Defendant, Match, owns and operates subsidiary "Tinder".

11.   On or around September 2018 Plaintiff submitted simple
query concerning logs of any Freedom of Information searches about
himself or his business Billenial Tech by which unnamed DOES claiming
to have positions of authority could have used to disseminate
publicly.

12.   Beginning in or around March 2019 Plaintiff submitted
report of the criminal activity of DOES committing corporate
espionage revealing sensitive information in part on social media.

13.   On or around April 2019 to November 2020 Plaintiff
submitted local report of messages from strangers concerning DOES
circulating death threats and homicidal activity aimed at Plaintiff
using social media while Albert was carrying out contract work for
Fortune 500 companies. Albert later named the platform—a Facebook
group—when describing further criminal activities including damages
to Plaintiff's main mode of transportation.

14.   Albert was approached by countless strangers in public with
increasing intensity since 2017. They mentioned "his" Facebook page,
"his" comments and "his" profile posts. They mentioned unreleased
work and threats and attempts. There were dense quantities of sexual
messages about proclivities, their sexual preferences, lewd content,
surveillance in bathrooms, rape, extremities and innuendo at almost

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

every location Plaintiff would find himself in and around Broward
County and outside the state. This was done at every hour, despite
increasing attempt to avoid these messages with reclusive behavior
and deletion of online data. These messages often contained
references to Plaintiff's "figurative" incarceration and tied these
statements in as a justification for the apparent invasion of privacy
and public dissemination see Exhibits B and C.

15.  On or around August 2019 through to December 2021 Plaintiff
submitted several IC3 FBI report of the aforementioned activity.
These reports detailed DOES claiming to have the authority to commit
the activity, spreading libel and defamation on Facebook groups.
These reports ultimately stated there was relevant corporate
espionage, trade secret theft with facilitation of illegal activity
on these Facebook groups. Plaintiff sought confirmation and immediate
action.

17.  On or around January 2020, Plaintiff filed two fraud civil
suits in the Broward County 17th judicial circuit contending process,
record, and billing. These suits included numerous motions predicated
on the verity of the aforementioned criminal activity on social media
in general.

18.  Albert later filed two federal questions predicated on the
Freedom of Information Act ("FOIA") seeking information and record on
the investigation of the 300+ reports submitted since 2018 for
immediate use in civil action. These questions additionally sought to
leverage the suits to end the activity in an expedited manner in the
event there was any potential authorization.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

19.  On May 2021 , Plaintiff, by his own investigation,
discovered the use of his information on a fake Facebook account
using his phone number see EXHIBIT H.

20.  Beginning in or around April 2021, through Facebook's
designated reporting method, Plaintiff submitted a total of 47 report
threads. Each thread contained messages concerning all the
aforementioned activity with reference to the identified impostor
Facebook account still in use by DOES while Albert described the
connection to the long reported Facebook group. Plaintiff submitted
CEASE and DESIST, official federal report, intellectual property
references and preservation letters requesting provision for use in
civil action to no avail see EXHIBITS A and EXHIBITS J—N.

21.  Immediately following initial report, the impostor Facebook
account was altered by removing the email identified in Albert's
reports to Facebook—see comparison in EXHIBIT H—a spoliation of
Plaintiff's primary exhibit further delaying action.

22.  On or around May, 21 2021, Plaintiff submitted final FBI
Internet Crime complaint concerning all previous reports, describing
the impostor Facebook account and connected Facebook group with
subsequent data alterations further concealing and prolonging the
reported activity. Plaintiff Albert noted that Facebook still hosted
the evidence see EXHIBIT A.

23.  Plaintiff is informed and believes and alleges therein that
Facebook intentionally ignored reports concerning the fake account
and criminal activity requiring Plaintiff to resubmit new threads for
response. Among the several messages, Facebook stated that the fake
Facebook account and connected activity was disabled when the

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

associated activity did in fact continue. Facebook questioned
Plaintiff's ownership of the reported intellectual property located
on the Facebook group time-line. Facebook lastly referred to the
contents of the Plaintiff's final report as a game.

24.  On or around February 2022 , on own investigation,
Plaintiff sought and discovered a new route to evidence—a fake Tinder
dating account—by reporting the information in use by the impostor
Facebook account. Plaintiff attached personal identifying information
and detailed criminal activity. Three days later, Albert attached the
FBI IC3 report of the Facebook group and Facebook account spoliation.
Less than two hours after supplementing Tinder report with the FBI
IC3 report concerning Facebook, Defendant Tinder stated that the fake
Tinder account reported was non-existent or potentially "removed"
from Tinder see EXHIBIT G.

25.  Albert subsequently implied alteration of the impostor
Tinder by DOES simply to evade being caught and continue the
activity. Defendant Tinder than stated the account actually did exist
and was removed by Tinder. Tinder than denied ALL disclosures citing
privacy concerns. Tinder staff further required Plaintiff to either
issue warrants by investigation or issue a valid subpoena for the
data on the fake Tinder account see EXHIBIT G.

26.  On February 2022, Plaintiff complied with Defendant
Tinder's request issuing a *subpoena duces tecum* without deposition
with option to email on Defendant's Tinder and Match in the lower
court suits described in paragraph 15. Plaintiff attached additional
preservation requests formally requesting receipts which Defendant
Tinder already was sending see EXHIBIT F.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

27.  Following Plaintiff's attachment of the subpoena receipts
ceased. Tinder and Match than opted to not provide response to
subpoena. Plaintiff fulfilled Tinder's request solely delaying action
on the fake Facebook account and Facebook group for no response.

28.  The fake Tinder account contains unauthorized data and
activity done on a subscription based account in Plaintiff's name and
information, when in fact, Plaintiff did not subscribe to or
authorize any payments and activity under that impostor Tinder
account. The Fake Tinder account and Plaintiff's name used on the
Tinder Fake account itself are unauthorized uses of Plaintiff's name
and likeness.

29.  The Facebook fake contains unauthorized data, posts, and
activity done in Plaintiff's name and information, when in fact,
Plaintiff did not create, post or authorize any activity under that
impostor Facebook account. The Fake Facebook account and Plaintiff's
name used on the Facebook Fake account and all posts done in
Plaintiff's name in the associated groups are gross unauthorized uses
of Plaintiff's name and likeness.

30.  To date no action has been taken by Facebook to delete or
remove the Fake Account.
31.  To date no action has been taken by Facebook to halt or
furnish record of the activities on the Fake account's associated
Facebook Group.
32.  To date no action has been done to Furnish record of the
"removed" Tinder Account or respond to issued subpoena.
33.  Removal of data can drastically alter production and is
spoliation of evidence.
34.  Tinder's removal of data is serious intentional spoliation.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

35.  Facebook's removal of data is serious spoliation.

36.  Facebook's first quarter advertising revenue for 2016 was $3.3 billion. Facebook is generating revenue using advertisements. Facebook leverages time and reach to calculate costs. Facebook is also generating revenue on basis of website traffic and content. The scope and duration of this action is in extreme excess due to intentional concealment, spoliation and false statements across the map. The content in use on the impostor Facebook account and on the fake's associated Facebook Group is unauthorized aggravated criminal activity bringing in traffic and views. This content includes trade secret theft, trade secret destruction, intellectual property theft and untruth; Much of which is relevant to the field in which the Defendant Facebook competes.

37.  Tinder is generating revenue on basis of dating profile subscriptions. Tinder acquires data in part using Facebook. Their Geo-location model permits the extension of activities across state lines and borders in the name and likeness of the user. This, in conjunction with aggravated, sexual and libelous content disseminated by DOES 1 through 100 increases the significance of contributing to delay. The use of changes in Geo-location is of relevance in evaluating spoliation by alteration and potential mention of Tinder on Facebook group generating ad revenue at trial.

## CASE LAW

The current cause has been plagued by delay and diversionary tactics in excess. The course of events has lead to extensive legal action and correspondence. At a minimum, electronically stored information and record has clearly been altered diverting express action in concurrent and foreseeable suits permitting ongoing damage. Spoliation occurs where evidence is destroyed or significantly altered, or where a party fails to "preserve property for another's

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

use as evidence in pending or reasonably foreseeable litigation."
*Mosaid Technologies v. Samsung Electronics, 348 F.Supp.2d 332, 335
(D.N.J. 2004) (internal citations omitted).*

As alleged above, Facebook and Tinder have data that has been
altered to the detriment of Plaintiff. Tinder failed to preserve
data, initially providing misleading statements concerning
nonexistence prior to admitting existence and intentional removal.
Tinder then denied production with request for legal procedures that
would go ignored when met by Plaintiff. Facebook received countless
explicit reports that would receive delayed, illogical or no response
until the data was altered leaving Plaintiff with unclear route to
action. See EXHIBITS I, M and N.

**State and Federal scope:**

The Court may impose sanctions on an offending party that has
breached the foreseeable duty to preserve. See *Scott v. IBM, Corp.,
196 F.R.D. 223, 248 (D.N.J. 2000).* The imposition of spoliation
sanctions, including adverse inferences, is governed by federal law,
*Martinez v. Brink's , Inc., 171 Fed. Appx. 263, 269 n.7 (11th Cir.
Mar. 8, 2006)*, but federal courts may look to state law for guidance.
*Wilson, 2008 WL 4642596 at *1.* In *Public Health Trust v. Valcin, 507
So.2d 596, 599 (Fla. 1987),* the Court held that when evidence was
intentionally lost, misplaced, or destroyed by one party, trial
courts were to rely on sanctions found in *Fla. R. Civ. P. 1.380(b)
(2),* and that a jury could well infer from such a finding that the
records would have contained indications of negligence. If the
negligent loss of the evidence hinders the other party's ability to
establish a prima facie case, then a rebuttable presumption of
negligence for the underlying tort will be applied. This presumption
and sanction were upheld in *Martino v. Walmart Stores Inc., 908 So.2d
at 346-47.*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Facebook's inability "to act" permitted the immediate spoliation of the evidence tied to the located impostor account and associated Facebook group. This alteration of evidence allowed the Facebook group and DOE 1's impostor activity to continue to this date. Tinder's direct and admitted spoliation of evidence by removal of DOE 2's data was done less than two hours after the provision of official Federal report. At a minimum, the presumption of negligence for the underlying torts should be applied to both Tinder and Facebook.

**Relevant spoliation sanctions:**

"Potential sanctions for spoliation include: … granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Mosaid, 348 F.Supp.2d at 335*. In determining which sanction is appropriate courts consider the following:

(1) The degree of fault of the party who altered or destroyed the evidence;

(2) The degree of prejudice suffered by the opposing party; and

(3) Whether there is a lesser sanction that will avoid substantial unfairness to the

opposing party, and where the offending party is seriously at fault, will serve to

deter such conduct by others in the future.

*Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).*

Sanctions granting judgment, adverse inference, fines, fees, and costs are relevant for express resolution of this case. Plaintiff has not only suffered irreparable damage during delay but currently suffers substantial unfairness in a total of 4 concurrent and past cases. For defendant Tinder the degree of fault is admitted. For defendant Facebook the degree of fault is apparent.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


**Adverse inference considerations:**

The adverse inference instruction is predicated "upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him." *Mosaid, 349 F.Supp.2d at 336.* Given instruction of adverse inference, the common sense observation—that the data is relevant and detrimental to the defendants—can be applied to the current action.
The four factors for consideration are as follows:

(1) the evidence was within the party's control;

(2) there was an actual suppression or withholding of evidence;

(3) the evidence was destroyed or withheld was relevant to the claims or defenses; and

(4) it was reasonably foreseeable that the evidence would be discoverable.
*Id.; Brewer v. Quaker State Oil Refining Co., 72 F.3d 326, 334 (3d Cir. 1995); Veloso v. Western Bedding Supply Co., 281 F.Supp.2d 743, 746 (D.N.J. 2003); Scott v. IBM Corp., 196 F.R.D. 223, 248 (D.N.J. 2000)*

There is little contention that the evidence delaying and hindering action is within the defendants control, that there was suppression and withheld evidence, that the evidence would be discoverable and that the evidence is relevant to the case complaint. Questions concerning culpability and the actions of DOES is irrelevant. *Mosaid* is clear in finding that, so long as the evidence is relevant, the *"offending party's culpability is largely irrelevant,"* as it cannot be denied that the opposing party has been prejudiced. Id.


**Adverse inference standards met:**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

This court has stated that adverse inferences are "one of the least severe sanctions which the court can impose." *Inmuno Vital, Inc. v. Telemundo Group, Inc.,* 203 F.R.D. 561, 574 (S.D. Fla. 2001); *accord Victor v. Makita U.S.A., Inc.,* No. 3:06-CV-479-J-33TEM, 2007 WL 3334260, at *2 (M.D. Fla. Nov. 9, 2007) (referring to an adverse inference as a "mild sanction"). A party seeking an adverse inference as a sanction for spoliation of evidence must show that:

(1) the evidence existed at one time;

(2) the evidence is relevant to the moving party's claim; and

(3) the spoiler breached a duty to preserve the evidence.
*Wilson,* 2008 WL 4642596 at *1; *Posely v. Eckerd Corp.,* 433 F. Supp. 2d 1287, 1315 (S.D. Fla. 2006) (citing *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y. 2004)).

The provided exhibits make it clear that Facebook, by and through their recovery portal had fake accounts using Plaintiffs information. The evidence shows that this information was altered immediately <u>after</u> submission of several reports containing current, past and foreseeable legal action. Despite misleading messages concerning the existence of evidence, Tinder admitted that the evidence existed, that it was relevant per violation of the terms of service and inline with the reported activity. Finally, Tinder admitted that they had intentionally removed the data that they are currently withholding.

**Expenditures and Judgment:**

Monetary sanctions are used to compensate a party for "the time and effort it was forced to expend in an effort to obtain discovery" to which it was entitled. *348 F.Supp.2d at 339.*
The degree of untruth continually disseminated by DOES on Facebook and their extensive actions have led to over 4 initiated cases.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Tinder's pointless requests required issuance and service of subpoena
for redactable data which only identified Plaintiff in part. Tinder
then made claims of privacy concerns following complaint of gross
actions by DOES including theft and invasion of privacy. These claims
fall short given inference of detrimental data and full provision is
merited.

The aforementioned actions can reasonably be seen as
diversionary tactics given the degree of unreasonable requests.
Response wasn't even given for fulfilled procedures. The loss of
evidence caused unnecessary delay and permitted further damage. As
such, Plaintiff requests judgment as a prejudiced party including
fines, fees, and costs and that an adverse inference be applied and
provided to the jury at an appropriate time.

## COUNT 1-Negligence

### (Against Tinder respondent superior Match)

38.  Plaintiff repeats and re-alleges the allegations contained
in paragraphs 1 through 37 of this Complaint and reiterates the same,
as though fully set forth herein.

39.  Tinder's intentional misleading messages concerning the
existence of the data were done following extensive correspondence
detailing the nature of the criminal activity and potential
spoliation on Facebook. Despite following Tinder's procedural
requests without question, Tinder continued to avoid response to
court issued subpoena further delaying action and permitting ongoing
activity. Notice, preservation request and issued subpoena went
without response. Tinder's intentional decision to both withhold data
and employ diversionary tactics to force legal action by Plaintiff is
knowledgeable enablement of imposters DOE 1 through 100.

41.  As a further result of Tinders's conduct, Albert continues
to suffer economic damages in that his reputation, intellectual

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

property and trade secrets continue to suffer irreparable damages.
DOES 1 through 100 are still permitted to continue imposter activity
on social media.

42.  Unless Tinder receives order to release withheld record,
Plaintiff will be irreparably harmed in a manner in which he cannot
be adequately compensated in money damages. Albert accordingly also
seeks relief against Tinder.

## COUNT 2-Negligence
### (Against Meta)

42.  Plaintiff repeats and re-alleges the allegations contained
in paragraphs 1 through 37 of this Complaint and reiterates the same,
as though fully set forth herein.

43.  Facebook has a series of policies regarding impostors/fake
accounts, libel, intellectual property, copyright theft and a
designated method for having this data removed, which Albert followed
in excess (over 45 threads of messages) due to slow, illogical or no
response. In addition, Albert notified Facebook of the particulars of
the constant damages with cease and desist, attached official
reports, examples, preservation requests and copies for search see
Exhibit J and L.

44.  Despite these notices, and their own stated policies,
Facebook negligently failed to act on Albert's notices concerning the
entirety. Upon reception, Facebook knew and explicitly made
statements concerning the impostor Facebook Account the associated
Facebook Groups and the contents of the timeline containing the
activities of DOES 1 through 100.

45.  Facebook is, at least, negligent and careless in the
failure to remove the Fake Account and the entirety of the Facebook
Groups Timeline with provision to Plaintiff Albert. As a result of

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Facebook's conduct Albert was forced to file an action to have the
Facebook group and DOES stopped.

46.  As a further result of Facebook's conduct, Albert has
suffered and continues to suffer economic damages in that his
reputation. Albert's intellectual property and trade secrets have
suffered irreparable damages. DOES 1 through 100 are still permitted
to continue the activity on Facebook's hosted pages.

47.  Unless Facebook is preliminarily or permanently enjoined
from hosting the Fake Facebook Account and associated Facebook Groups
and content, Plaintiff will be irreparably harmed in a manner in
which he cannot be adequately compensated in money damages. Albert
accordingly also seeks injunctive relief against Facebook.


**COUNT 3 – 43(a) of Lanham Act False Designation of Origin**
**(Against Meta and DOE 1)**

48.  Plaintiff repeats and re-alleges the allegations contained
in paragraphs 1 through 37  of this complaint and reiterates the
same, as though fully set forth herein.


49.  As described above, Defendants Facebook and DOE 1 through
100 have used Plaintiff's name and persona. Defendants Facebook and
DOE 1 advertised and represented that the Fake Facebook account and
all associated posts, data, and groups belonged to and were the
actions of Benjamin Albert, when in fact, they were not. Such use has
caused confusion to the origin, sponsorship, and approval of the
damaging data fake account by the public.


50.  As alleged above, Facebook was put on notice that the
public would be likely confused as to the source or sponsorship of

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

the Fake Facebook account. Facebook continues to supply the means of
infringement, and criminal facilitation of DOES 1 through 100 despite
their obvious means of control over the Fake account.

51.  Additionally, Facebook has, with knowledge, induced, caused
or materially contributed to the infringing conduct of DOES 1 through
100. Facebook is unreasonably delaying in removing the Fake account
or disabling the associated groups  despite excessive notification of
its existence and apparent wide scale harm.

52.   Facebook's and every DOE'S actions as described herein are
in direct violation of Section 43(a) of the Lanham Act (15. U.S.C §
1125).

53.  As a direct and proximate result of Facebook and every
DOE'S actions as stated herein, Albert has suffered extremely
longstanding distress and damage to reputation. Additionally, there
has been destruction of trade secrets, theft of intellectual
property, destruction of property, disruption of concurrent
complaints and aggravated factors due to the facilitation of the
activities on the fake accounts associated Facebook groups. There has
been assault and battery whilst baker acted under the premise of the
non-existence of the activity, extreme invasion of privacy for
broadcast on Facebook and activities to be described at length by
DOES 1 through 100.

54.  The acts of Facebook, Tinder and DOES 1 through 100 are
believed to be willful and accordingly, Plaintiff is entitled to
receive treble damages as a result of the Defendant's actions.
Similarly, this is an exceptional case with several aggravating
factors. Warranting an award for the legal fees of various concurrent

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

actions done to circumvent actions contributing to delay and
concealment.

55. As a direct and proximate result of said wrongful conduct
by Defendant's Facebook and Tinder Plaintiff has suffered damages in
an amount to be proven at trial.

56. Unless Facebook is preliminarily or permanently enjoined
from hosting the Fake Facebook Account and associated Facebook Groups
and content, Plaintiff will be irreparably harmed in a manner in
which he cannot be adequately compensated in money damages. Albert
accordingly also seeks injunctive relief against Facebook.

## COUNT 4 – 43(a) of Lanham Act False Designation of Origin
### (Against Tinder respondent superior Match and DOE 2)

57. Plaintiff repeats and re-alleges the allegations contained
in paragraphs 1 through 37  of this complaint and reiterates the
same, as though fully set forth herein.

58. As described above, Defendants Tinder and DOE 2  have used
Plaintiff's name and persona by advertising and representing that the
Fake Tinder account, and all associated activities and choices were
the actions of Benjamin Albert, when in fact, they were not. Such use
has caused confusion to the origin, sponsorship, and approval of the
fake account by the public.

59. As alleged above, Tinder was put on notice that the public
was and had been confused as to the source or sponsorship of the Fake
Tinder account. Tinder continues to deny production of crucial
information concerning the Impersonator account needed for
clarification in civil action.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

60.  Additionally, Tinder has, with knowledge, induced, caused
or materially contributed to the infringing conduct of DOE 2 and
Facebook, by unreasonably delaying production of the data within the
fake Tinder account while altering the data in the impersonator
account by removal.

61.  Tinder and DOE 2's actions as described herein are in
direct violation of Section 43(a) of the Lanham Act (15. U.S.C §
1125).

62. As a direct and proximate result of Tinder and DOE 2's
actions as stated herein, Albert has been required to file multiple
subpoena in the lower courts and file suit.

63.  The acts of Tinder and DOE 2 are believed to be willful and
accordingly, Plaintiff is entitled to receive treble damages as a
result of the Defendant's actions. Similarly, this is an exceptional
case with several aggravating factors. Warranting an award for the
legal fees of the current action.

64.  As a direct and proximate result of said wrongful conduct
by Defendant Tinder. Plaintiff has suffered damages in an amount to
be proven at trial.

65.  Plaintiff will be irreparably harmed in a manner in which
he cannot be adequately compensated in the event Defendant Tinder
continues to deny the production of the data concerning the
existence, scope, and severity of the activities done by DOE 2 . This
data is necessary for clarification of record and the docket in the

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

lower courts. Albert accordingly also seeks injunctive relief against Tinder.

## Count 5- Violation of the Civil Remedies For Criminal Practices Act (Against DOE 1 and DOE 2)

66.  Plaintiff repeats and re-alleges the allegations contained in paragraphs l through 37 of this Complaint and reiterates the same, as though fully set forth herein.

67.  This is an action for civil remedies for criminal practices, Fla. Stat. § 772.101 et seq.

68.  This is an action for "threefold the actual damages sustained…and reasonable attorney's
Fees and court costs…" as provided by Fl. Stat. § 772.104 and 772.11.

69.  Defendant directly engaged criminal activity as defined by Fla. Stat. § 772.102(22) and
Detailed and specified, below.

70.  Violation of Fla. Stat. § 817.568 "the criminal use of personal information" is one of the
Enumerated qualifying offenses constituting "criminal activity" listed in the Civil
Remedies for Criminal Practices Act under Fla. Stat. Ch. 772 et seq.

71.  DOE 1 and DOE 2 willfully and without authorization fraudulently used Plaintiff's personal identification information including but not limited to his name, without first obtaining Plaintiff's consent. DOE 2's fraudulent actions were done on a subscription based account.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

72.   As a direct and proximate result of said wrongful conduct
by Defendant, Plaintiff has suffered damages in an amount to be
proven at trial.

73.   Unless Defendants are preliminarily and permanently
enjoined from hosting the Fake account on Facebook, Plaintiff will be
irreparably harmed in a manner in which he cannot be adequately
compensated in money damages. Plaintiff accordingly also seeks
injunctive relief against Defendants.

WHEREFORE, Plaintiff Albert seeks the following determination:

1.   For special, consequential and general damages in an
amount to be established at trial but believed to be no
less than the jurisdictional amount in principal, together
with allowable interest thereon at the maximum legal rate.

2.   For costs of suit and fees to the extent recoverable
by law and herein incurred;

3.   For an injunction preventing the Fake Account and
associated Groups from being hosted on Facebook.com;

4.   Order for full record from Facebook or Meta without
delay;

5.   Order for full record from Tinder or Match without
delay.

6.   For an injunction prohibiting DOES 1 and DOE 2 from
holding themselves out to be Plaintiff;

7.   For such other and further relief as the Court may
deem just and proper.

**DEMAND FOR JURY**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated this___7th_____ day of March 2022.


DATED:

Respectfully Submitted,

s/ Benjamin Albert

Coconut Creek, fl 33068

Ba13c@protonmail.com

4161 Carambola Cir. S.
Coconut creek fl 33060