UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-60496-CIV-COHN/STRAUSS

BENJAMIN ALBERT,

     Plaintiff,

v.

TINDER, INC., MATCH GROUP, INC.,
MATCH GROUP, LLC, FACEBOOK,
INC., META PLATFORMS, INC., and
DOES 1-100,

     Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS MATCH GROUP, LLC AND MATCH GROUP, INC.'S MOTION TO DISMISS AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendants Match Group, LLC and Match

Group, Inc.'s Motion to Dismiss Complaint ("Motion") [DE 25].  The Court has

considered the Motion, *pro se* Plaintiff Benjamin Albert's Response [DE 29],

Defendants' Reply [DE 32], Plaintiff's Sur-Reply [DE 37],[1] and the record in this case,

and is otherwise advised in the premises.

## I.   Background

This case concerns alleged fake Facebook and Tinder accounts registered under

Plaintiff's name.  Plaintiff is a Florida resident who owns a technology company.  DE 24

¶¶ 3, 14.  According to his Amended Complaint, Defendants Match Group, LLC and

Match Group, Inc. (collectively, "Match Defendants") own Defendant Tinder, Inc. as a

---

[1] Plaintiff filed his Sur-Reply without seeking leave of the Court, in violation of Local Rule 7.1(c).  The Court has, however, considered the unauthorized Sur-Reply to fully hear Plaintiff's arguments.  While the Court acknowledges that Plaintiff is proceeding *pro se*, any future unauthorized filings will not be considered.

subsidiary.[2]  Id. ¶ 17.  Match Defendants are incorporated and have their principal place of business in Texas.  Id. ¶ 5; DE 25 at 6.  Plaintiff asserts that Match Defendants published his image and likeness to a fake Tinder account that Plaintiff discovered in February 2022.  DE 24 ¶¶ 30, 64.  Soon after, Match Defendants allegedly deleted the account and withheld account information that he requested.  Id. ¶ 31.  Plaintiff also asserts that Match Defendants contributed to hacking his computer to unlawfully obtain business material.  Id. ¶ 114.

Plaintiff brings six claims against Match Defendants, alleging negligence (Count I), false designation of origin under the Lanham Act (Count IV), unfair competition under the Lanham Act (Count VI), misappropriation of name and likeness under the Florida Statutes (Count VII), common law misappropriation of name and likeness (Count VIII), and violations of the Computer Fraud and Abuse Act (Count IX).  See DE 24.

Match Defendants move to dismiss these claims on the following grounds: lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); lack of personal jurisdiction under Rule 12(b)(2); failure to state a claim under Rule 12(b)(6); and immunity from liability under the Communications Decency Act.  DE 25 at 7.  Match Defendants also seek dismissal of all claims against Match Group, Inc., arguing that Plaintiff fails to establish Match Group, Inc.'s vicarious liability for the acts of Tinder, Inc. Id. at 12.

For the reasons set forth below, the Court finds that it has subject matter jurisdiction over Plaintiff's claims against Match Defendants but that Count IX must be

---

[2] In their Motion, Match Defendants assert that Defendant Tinder, Inc. is a non-existent entity, following its merger with Match Group, LLC in 2017.  DE 25 at 1, n.1.  On this basis, the Court will dismiss the claims against Tinder, Inc. with prejudice as discussed in Part III-F, infra.

dismissed without prejudice for lack of personal jurisdiction and Counts I, IV, and VI dismissed with prejudice for failure to state a claim. Counts VII and VIII against Match Defendants survive dismissal on all grounds. Moreover, all claims against Defendant Tinder, Inc. (Counts VI, VII, VIII, and IX) are due to be dismissed with prejudice because Tinder, Inc. is a non-existent entity. Accordingly, Match Defendants' Motion will be **GRANTED in part**.

## II.    Legal Standard

### A.    Pro Se Litigant's Pleadings

A *pro se* litigant's pleadings must be construed more liberally than those drafted by counsel. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir.1990) ("In the case of a *pro se* action . . . the court should construe the complaint more liberally than it would formal pleadings drafted by lawyers."). However, "this leniency does not give a court license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir.1998). And while *pro se* litigants are entitled to have their pleadings liberally construed, such liberal construction does not extend to a *pro se* litigant's failure to comply with federal procedural rules or local court rules. See Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999).

### B.    12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A plaintiff bears the burden of establishing the court's original subject matter jurisdiction through federal question or diversity jurisdiction. McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002). A defendant may raise a facial or factual attack

to subject matter jurisdiction.  See McElmurray v. Consolidated Gov't of Augusta-Richmond County, 501 F.3d 1244, 1251 (11th Cir. 2007).  Facial attacks occur when the defendant challenges whether the complaint sufficiently alleges a basis of subject matter jurisdiction.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  The court must take the allegations in the complaint as true for purposes of the motion.  Lawrence, 919 F.2d at 1529.  Factual attacks, by contrast, occur when the defendant challenges whether matters outside of the pleadings support the exercise of subject matter jurisdiction.  Id.  A court need not take the factual allegations as true and instead may independently weigh facts.  Id.  In their Motion, Match Defendants raise a facial attack to subject matter jurisdiction.

    C.      12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff must allege sufficient facts in her complaint to demonstrate a prima facie case of personal jurisdiction.  Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268–69 (11th Cir. 2002).  A prima facie case requires enough evidence to withstand a motion for a directed verdict.  Meier, 288 F.3d at 1268–69.  Under this standard, a plaintiff must establish that the court's exercise of personal jurisdiction comports with the forum state's long-arm statute and due process.  Marsalis v. STM Reader, LLC, 806 F. App'x 748, 750 (11th Cir. 2020).

A court must accept the facts asserted in the complaint as true unless controverted by the defendant.  Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n, 140 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001).  If the defendant offers affidavits contesting jurisdiction, the burden shifts back to the plaintiff to submit countervailing evidence.  Meier, 288 F.3d at 1269.  The burden does not shift, however,

if the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.  Id.  If the plaintiff's allegations and supporting evidence conflict with the defendant's evidence, a court must construe all reasonable inferences in favor of the plaintiff.  Id.

      D.     12(b)(6) Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a court should grant a motion to dismiss where the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely."  Id. at 556.

## III.   Discussion

      A.     Plaintiff Establishes Subject Matter Jurisdiction Over all Claims Against Match Defendants

Plaintiff invokes federal question jurisdiction based on his Lanham Act (Counts IV and VI) and Computer Fraud and Abuse Act ("CFAA") (Count IX) claims.  DE 24 ¶ 1; DE 29 at 10.  He asserts that supplemental jurisdiction applies to the remaining state and

common law claims (Counts I, VII, and VIII).  DE 24 ¶ 1.  Match Defendants contend

that the Court lacks federal question jurisdiction because Plaintiff has not established

standing to bring a Lanham Act claim.  DE 25 at 4–6.  Match Defendants rely on the

Lanham Act standing requirements set forth in <u>Lexmark Intern., Inc. v. Static Control

Components, Inc.</u>, 572 U.S. 118 (2014).  <u>Id.</u> at 5.  These standing requirements,

however, do not implicate subject matter jurisdiction but instead implicate whether a

cause of action exists.  <u>Lexmark</u>, 572 U.S. at 128 (explaining that statutory standing

asks whether there is a cause of action, which "does not implicate subject-matter

jurisdiction").  Additionally, the standing requirements expressly apply only to false

advertising claims.  <u>Lexmark</u>, 572 U.S. at 140 ("To invoke the Lanham Act's cause of

action for *false advertising*, a plaintiff . . .") (emphasis added).  Yet Plaintiff does not

bring a false advertising claim under the Lanham Act, only claims of false designation of

origin (Count IV) and unfair competition (Count VI).  <u>See</u> DE 24.  As such, Match

Defendants' standing challenge is inapplicable to these claims.

Aside from this standing challenge, Match Defendants do not contest the

Court's federal question jurisdiction.  <u>See</u> DE 25 at 4–6.  Such jurisdiction is conferred

when a plaintiff alleges a claim under federal law or if a substantial question of federal

law is integral to a state law claim.  <u>Jairath v. Dyer</u>, 154 F. 3d 1280, 1282 (11th Cir.

1998).  As Plaintiff's Lanham Act and CFAA claims (Counts IV, VI, and IX) are brought

under federal law, these claims provide federal question jurisdiction.

Match Defendants also do not challenge that supplemental jurisdiction applies to

the remaining state and common law claims (Counts I, VII, and VIII), and the Court

notes that its exercise of such appears proper.  <u>See</u> 28 U.S.C. § 1367(a).  The state and

common law claims derive from a common nucleus of operative facts as Plaintiff's federal law claims, see United Mine Workers of America v. Gibbs, 383 U.S. 715, 724–25 (1966), given that all claims concern the alleged publication of social media content. Accordingly, the Court finds that it has subject matter jurisdiction over all claims against Match Defendants.

B.    Plaintiff Establishes Specific Personal Jurisdiction Over Match Defendants Only as to his Statutory and Common Law Misappropriation Claims

Match Defendants next challenge the Court's exercise of personal jurisdiction. DE 25 at 6–8.  Plaintiff asserts that specific personal jurisdiction[3] is met because of Match Defendants' sufficient contacts with Florida.  DE 29 at 10–13.  Where, as here, a court has federal question jurisdiction under a statute that is silent as to service of process, specific personal jurisdiction requires a two-step inquiry: (1) whether Florida's long-arm statute authorizes the exercise of jurisdiction over the non-resident defendant and (2) whether due process authorizes same.  See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996) (addressing specific personal jurisdiction when a court has federal question jurisdiction).  For the reasons discussed below, the Court finds that its exercise of specific personal jurisdiction over Match Defendants is proper solely as to Plaintiff's statutory and common law misappropriation claims (Counts VII and VIII).

1.    Florida's Long-Arm Statute

Plaintiff does not specify under which provision of Florida's long-arm statute, Fla. Stat. § 48.193(1)(a), he asserts specific personal jurisdiction.  The Court finds that only

---

[3] Plaintiff nowhere asserts that the Court has general jurisdiction over Match Defendants.

subsections 1, 2, and 6 are potentially applicable.  Florida's long-arm statute provides in relevant part that a defendant is subject to specific personal jurisdiction in Florida if the cause of action arises from any of the following acts:

> (1) Operating, conducting, engaging in, or carrying on a business or business venture in this state . . .
>
> (2) Committing a tortious act within this state.
>
> . . .
>
> (6) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
>> a. The defendant was engaged in solicitation or service activities within this state; or
>>
>> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1)(a)(1), (2), and (6).

To survive dismissal under Rule 12(b)(2), Plaintiff must establish a prima facie case of the Court's personal jurisdiction over Match Defendants as to each claim.  See Argos Global Partner Services, LLC v. Ciuchini, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. Mar. 11, 2020) ("Specific jurisdiction is claim-specific, and a court may hold it has specific personal jurisdiction over a defendant as to one claim but not as to another in the same suit.").  As discussed below, the Court finds that none of Plaintiff's claims against Match Defendants allege facts that fall within either Fla. Stat. § 48.193(1)(a)(1) or § 48.193(1)(a)(6).  Plaintiff does, however, show that Fla. Stat. § 48.193(1)(a)(2)—the tortious act subsection—is met with respect to Counts VII and VIII, but not Counts I, IV, VI, and IX.

First, to satisfy Fla. Stat. § 48.193(1)(a)(1), a plaintiff must sufficiently allege facts to show that the defendant operates, conducts, engages in, or carries on business in Florida.  See Meyer Werft GMBH & Company, KG v. Humain, 305 So.3d 657, 660 (Fla. 3d DCA 2020) ("Initially, the plaintiff bears the burden of pleading sufficient jurisdictional facts to fall within the long-arm statute.").  Factors relevant to this inquiry include "the presence and operation of an office in Florida," "the possession and maintenance of a license to do business in Florida," "the number of Florida clients served," and "the percentage of overall revenue gleaned from Florida clients."  Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005).  It is undisputed that Match Defendants' headquarters and principal place of business are in Texas.  DE 24 ¶ 5; DE 25 at 6.

Plaintiff, however, fails to allege nearly any facts about Match Defendants' offices, business licenses, clients, or revenue, if any, in Florida.  In his Amended Complaint, Plaintiff claims that Match Defendants generate revenue from Tinder advertisements, but he does not assert that the revenue is generated from Florida viewers.  See DE 24 ¶ 43.  This allegation does not show that Fla. Stat. § 48.193(1)(a)(1) is met.  See Horizon, 421 F.3d at 1167–68 (finding Fla. Stat. § 48.193(1)(a)(1) was not satisfied even when the plaintiff alleged that the defendant generated 5% of its revenue from Florida clients).  Moreover, in his Response, Plaintiff asserts that Tinder subscribers reside in Florida, among other locations.  DE 29 at 11.  But having online customers in Florida does not constitute doing business in Florida for purposes of Fla. Stat. § 48.193(1)(a)(1).  See RG Golf Warehouse, Inc. v. Golf Warehouse, Inc., 362 F. Supp. 3d 1226, 1236 (M.D. Fla., Jan. 24, 2019) ("[A]lthough

Defendant operates an interactive website that is accessed daily by potential and actual Florida customers, the Court finds that only amounts to doing business 'as *if* in Florida,' which is 'insufficient under the plain text of the [long-arm] statute.'") (quoting <u>Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.</u>, 421 F.3d 1162, 1167 (11th Cir. 2005)). These are Plaintiff's only allegations about Match Defendants' business activity in Florida.  <u>See</u> DE 24; DE 29.  Thus, the Court finds that Plaintiff fails to allege sufficient facts to show that Fla. Stat. § 48.193(1)(a)(1) authorizes the exercise of personal jurisdiction.

Next, Fla. Stat. § 48.193(1)(a)(6) is met when a defendant, at the time of a plaintiff's injury, engages in solicitation or service activities in Florida or produces items anywhere that were used in Florida.  This subsection requires that a "defendant's out of state actions cause personal injury or damage to physical property in the State of Florida."  <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1318 (11th Cir. 2006).  Among Plaintiff's alleged injuries,[4] battery and damage to his transportation method are the only that constitute harm to his person or physical property.  <u>See</u> DE 24 ¶¶ 20, 59.  Yet because Plaintiff asserts that third parties unrelated to Match Defendants caused these injuries, he fails to show that Match Defendants caused the alleged harm.  <u>See</u> <u>id</u>. Accordingly, Plaintiff does not demonstrate that any of his claims fall within Fla. Stat. § 48.193(1)(a)(6).

Last, Fla. Stat. § 48.193(1)(a)(2) is met when a claim arises from a defendant's tortious act in Florida.  Plaintiff alleges the following tort claims against Match

---

[4] Plaintiff alleges the following injuries: emotional distress, harm to his reputation, theft of intellectual property, assault and battery, and damage to his transportation method.  DE 24 ¶¶ 20, 59.

Defendants: negligence (Count I), false designation of origin and unfair competition

under the Lanham Act (Counts IV and VI), and statutory and common law

misappropriation of name and likeness (Counts VII and VIII).  See Seifert v. U.S. Home

Corp., 750 So. 2d 633, 640 (Fla. 1999) ("[T]his case involves a claim sounding in tort,

i.e., negligence."); American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.,

42 F. 3d 1421, 1433 (3d Cir. 1994) ("The [Lanham] Act federalizes a common law tort.");

Lane v. MRA Holdings, LLC, 242 F. Supp. 2d 1205, 1220, n.70 (M.D. Fla. 2002)

("Florida continues to recognize the common law tort of invasion of privacy—

commercial misappropriation of likeness.").  Plaintiff's CFAA claim (Count IX), however,

is not a tort claim.  Health First, Inc. v. Hynes, No. 11-00715, 2014 WL 12648552, at *10

(M.D. Fla. Sept. 17, 2014) ("Violations of the CFAA . . . are not common law torts.").

Because the CFAA claim falls outside of Fla. Stat. § 48.193(1)(a)(2), and all other

Florida long-arm statute provisions, the claim is dismissed without prejudice for lack of

personal jurisdiction.

Under Florida law,[5] the Court must ensure that Plaintiff's tort claims state a cause

of action before finding that the claim falls within Fla. Stat. § 48.193(1)(a)(2).  See

Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) ("[W]here the threshold question

of personal jurisdiction turns on whether a tort is committed in Florida, the court

necessarily must review the allegations of the complaint to determine if a cause of

action is stated.") (relying on 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co.,

638 So.2d 149, 151 (Fla. 4th DCA 1994); see also PVC Windoors, Inc. v. Babbitbay

Beach Const., N.V., 598 F.3d 802, 808 (11th Cir. 2010) (applying Wendt and 8100 R.R.

---

[5] The Court applies the Florida long-arm statute as would the Florida Supreme Court.  Louis Vuitton
Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11th Cir. 2013).

<u>Ave.</u>).  For the reasons set forth below, the Court finds that only Plaintiff's statutory and common law misappropriation claims (Counts VII and VIII) state a cause of action. [6] Accordingly, Florida's long arm-statute authorizes the exercise of personal jurisdiction over Match Defendants as to solely these claims.

The elements of statutory and common law misappropriation of name and likeness are the same.  <u>See</u> <u>Lane v. MRA Holdings, LLC</u>, 242 F. Supp. 2d 1205, 1220 (M.D. Fla. 2002) ("Under Florida law, the elements of common law invasion of privacy—commercial misappropriation of likeness coincide with the elements of unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08.").  Plaintiff brings his statutory misappropriation claim under Fla. Stat. § 540.08.  DE 24 at ¶ 93.  This provision provides that "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent [from such person, an authorized agent, or a surviving spouse or child]."  Fla. Stat. § 540.08(1).  To state a claim under this provision, a plaintiff must allege that the publication "directly promote[s] a product or service."  <u>Tyne v. Time Warner Entertainment Co., L.P.</u>, 425 F.3d 1363, 1363 (11th Cir. 2005) (explaining that the phrase "for purposes of trade or for any commercial or advertising purpose" as found in Fla. Stat. § 540.08(1) "does not apply to publications . . . which do not directly promote a product or service").

---

[6] As discussed in Part III-C, <u>infra</u>, Plaintiff's claims of negligence (Count I), unfair competition (Count IV), and false designation of origin (Count VI) fail to state a claim.  Accordingly, these claims will be dismissed with prejudice under Rule 12(b)(6).

In his Amended Complaint, Plaintiff asserts that Match Defendants committed statutory and common law misappropriation by publishing without consent his "images, private activities, likeness, voice, and/or identity on . . . Tinder" in order to "advertise, promote, market, or endorse Defendants' businesses, groups, pages, applications, events, or activity."  DE 24 ¶¶ 99, 100.  In so pleading, Plaintiff sufficiently alleges the requirements of misappropriation of name and likeness, including that the alleged publication directly promotes Match Defendants' product or service.  See Taylor v. Trapeze Management, LLC, No. 17-62262, 2018 WL 9708619, at *5 (S.D. Fla. Mar. 26, 2018) (finding that an alleged publication "in order to promote, advertise, and market [defendant's business] and its events and activities" sufficiently pled direct promotion for purposes of Fla. Stat. § 540.08).  Thus, Plaintiff states a cause of action for statutory and common law misappropriation of name and likeness (Counts VII and VIII). Accordingly, those claims can fall within Fla. Stat. § 48.193(1)(a)(2).[7]

Fla. Stat. § 48.193(1)(a)(2) is satisfied when the alleged act occurs outside of Florida, so long as the act causes injury within Florida.  Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999) (finding that the Florida long-arm statute is met when a defendant allegedly commits "tortious acts outside the state that cause injury in Florida").  Plaintiff's misappropriation claims allege injuries to Plaintiff within Florida, namely, harm to his reputation and damage to his work product.  DE 24 ¶¶ 90–105.  As such, his statutory and common law misappropriation claims meet the requirements of the tortious act subsection of Florida's long-arm statute.  Accordingly, Fla. Stat. §

---

[7] In finding that Plaintiff states a cause of action for his statutory and common law misappropriation claims for purposes of Fla. Stat. § 48.193(1)(a)(2), the Court concludes that these claims should not be dismissed under Rule 12(b)(6) for failure to state a claim, as Match Defendants argue.  See DE 25 at 18–20.

48.193(1)(a)(2) authorizes the Court's exercise of specific personal jurisdiction over Match Defendants as to Plaintiff's misappropriation claims (Counts VII and VIII).

          2.    <u>Due Process</u>

The Court must next determine whether its exercise of specific personal jurisdiction over Match Defendants with respect to Plaintiff's misappropriation claims comports with due process.  Due process asks whether: "(1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." <u>Louis Vuitton Malletier, S.A. v. Mosseri</u>, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotations omitted).  The plaintiff bears the burden of establishing the first two elements, and upon doing so, the burden shifts to the defendant to show that the third element is not met.  <u>Id.</u>

The Court finds that the first element of the due process inquiry is satisfied. Plaintiff's misappropriation claims arise out of Match Defendants' alleged publication of the name and likeness of Plaintiff, a Florida resident.  <u>See</u> DE 24 ¶¶ 93, 98.

When an intentional tort is alleged, courts evaluate the second element of the due process inquiry under the "effects" test or traditional minimum contacts analysis, either of which satisfies the second element.  <u>Louis Vuitton</u>, 736 F.3d at 1356.  Under the effects test, a single tortious act can establish purposeful availment regardless of whether the defendant had other contacts with the forum state.  <u>Id.</u>  This test is met when the alleged tort was (1) intentional, (2) aimed at the forum state, and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.

Id.; see Licciardello v. Lovelady, 544 F.3d 1280, 1287 (11th Cir. 2008) ("[A] number of courts have held that where a defendant's tort[i]ous conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.") (internal quotations omitted).

The Court finds that Plaintiff alleges enough to meet the effects test.[8]  Plaintiff asserts that Match Defendants: (1) committed an intentional tort—misappropriation of his name and likeness; (2) that was aimed at Plaintiff, a resident of Florida; and (3) that harmed Plaintiff's reputation and work product, which Match Defendants reasonably should have anticipated would be suffered in Florida, where Plaintiff resides.  See DE 24 at ¶¶ 3, 90–105.  Accordingly, the Court finds that Plaintiff sufficiently shows that the effects test for purposeful availment is satisfied, meeting the second element of the due process inquiry.  See Licciardello, 544 F.3d at 1287 (concluding that the effects test was met when the defendant allegedly used the plaintiff's "trademarked name and his picture on a website accessible in Florida in a manner to imply [the plaintiff's] endorsement of [the defendant] and his products").

As Match Defendants do not challenge the third element of the due process analysis, the Court finds no basis to conclude that its exercise of personal jurisdiction does not comport with traditional notions of fair play and substantial justice.  See Louis Vuitton, 736 F.3d at 1355 (explaining that the defendant bears the burden of showing

---

[8] Although Plaintiff and Match Defendants address solely the minimum contacts test in their briefing, the Court instead applies the effects test because that test has been relied on particularly for intentional tort claims relating to intellectual property.  See, e.g., Licciardello v. Lovelady, 544 F.3d 1280, 1287 (11th Cir. 2008) (applying the effects test to a misappropriation of name and image claim); Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc., 102 F. Supp. 3d 1264, 1273 (M.D. Fla. April 6, 2015) (same with respect to a trademark infringement claim);  Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1324 (M.D. Fla. July 26, 2010) (same as to a copyright infringement claim).

that the third element of the due process inquiry is not met).  With the three elements of the due process inquiry met, Plaintiff sufficiently shows that the exercise of specific personal jurisdiction over Match Defendants is proper as to Plaintiff's misappropriation claims (Counts VII and VIII).  See id.

C.     Plaintiff Fails to State a Claim of Negligence, Unfair Competition, and False Designation of Origin Under Rule 12(b)(6)

Match Defendants challenge that Plaintiff states a claim of negligence (Count I) under Rule 12(b)(6), arguing that Plaintiff does not show that Match Defendants owed him a duty of care.  DE 25 at 13.  Plaintiff's briefing does not address this argument.  To state a claim of negligence under Florida law, a plaintiff must allege that the defendant owed her a duty of care, the defendant breached that duty, and the breach caused plaintiff to suffer damages.  Nettles v. City of Leesburg Police Dep't, 415 F. App'x 116, 122 (11th Cir. 2010).  Plaintiff alleges negligence from Match Defendants' "misleading messages concerning the existence of the [Tinder account] data" and through their alleged failure to respond to discovery requests in the parties' prior lawsuit.  DE 24 ¶ 45.

Plaintiff's assertions, however, do not provide a basis for the Court to infer that Match Defendants owed him a duty of care.  See Insight Securities, Inc. v. Deutsche Bank Trust Company Americas, No. 20-23864, 2021 WL 3473763, at *3 (S.D. Fla. Aug. 6, 2021) ("[T]he Plaintiffs have not alleged a basis from which the Court could infer a duty of care.").  "Florida law recognizes four sources of duties of care: statutes and regulations, judicial interpretations of legislation, judicial decisions, and duties arising from the facts of a particular case."  Wiand v. Wells Fargo Bank, N.A., 86 F. Supp. 3d 1316, 1321 (M.D. Fla. 2015).  But none of these sources indicate that a duty arises from the two bases of Plaintiff's negligence claim: (1) Match Defendants' online

communication with Plaintiff after he sought information about the alleged Tinder account, and (2) the alleged discovery violations of Match Defendants in a prior lawsuit. See DE 24 ¶ 45.  Given that Plaintiff fails to allege facts suggesting that Match Defendants owed a duty of care, he fails to state a claim of negligence.  See Nettles, 415 F. App'x at 122.

Second, Match Defendants argue that Plaintiff fails to state a claim for unfair competition and false designation of origin (Counts IV and VI).  The elements of these two claims are the same: a plaintiff must show "(1) that the plaintiff had enforceable . . . rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two."  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (stating the two elements); Cole-Parmer Instrument Co. LLC v. Professional Laboratories, Inc., 568 F. Supp. 3d 1307, 1316 (S.D. Fla. Oct. 19, 2021) (explaining that false designation and unfair competition claims consist of the same elements).  Plaintiff's unfair competition and false designation of origin claims are based on Match Defendants' alleged use of his name and likeness. See DE 24 ¶¶ 93, 95, 99, 100, 103.

A plaintiff meets the first element of these claims by alleging rights to either a registered or unregistered trademark.  See Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010) ("To satisfy the first element of § 43(a)—proof of a valid trademark—a plaintiff need not have a registered mark.  We have recognized that the use of another's unregistered, i.e., common law, trademark can constitute a violation of § 43(a).").  Plaintiff nowhere alleges that he owns a registered trademark of his name and likeness. To demonstrate that he owns an unregistered trademark, Plaintiff must allege that his

name and likeness identify and distinguish his goods from those of others.  See Tana,

611 F.3d at 773 ("[O]nly those marks that are capable of distinguishing the owner's

goods from those of others . . . are eligible for federal registration or protection as

common law [*i.e.* unregistered] marks under the Lanham Act.").  Plaintiff's Amended

Complaint suggests that the goods at issue are "copies of Plaintiff's work," which

allegedly include data, source code, and files.  DE 24 ¶ 82.

A mark qualifies as an unregistered trademark if it is either "inherently distinctive

or has acquired a secondary meaning."  Bavaro Palace, S.A. v. Vacation Tours, Inc.,

203 F. App'x 252, 255 (11th Cir. 2006).  A mark is inherently distinctive when it is

"capable of identifying products or services as coming from a specific source."  Two

Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 773 (1992).  But a name, such as

Plaintiff's name, cannot qualify as an inherently distinctive mark.  See Tana, 611 F.3d at

776 ("The policy reasons for requiring secondary meaning for the use of a personal or

surname as a mark extend equally to the use of full names.").  And the Court finds that

Plaintiff's likeness is also not an inherently distinctive mark.  Specifically, Plaintiff

provides no indication that an image of him would identify his products as deriving from

his company.  See Two Pesos, 505 U.S. at 773.

Next, a mark obtains secondary meaning when "the public identifies the [mark]

with the producer as the source of the product."  Conagra, Inc. v. Singleton, 743 F.2d

1508, 1513 (11th Cir. 1984).  A plaintiff bears a high burden in establishing this proof.

Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1525

(11th Cir. 1991).  To allege that secondary meaning is met, a plaintiff must plead facts

relating to the following factors: evidence from consumer surveys, the length and

manner of the mark's use, the nature and extent of advertising and promotion, the efforts made by the plaintiff to promote a conscious connection in the public's mind between the mark and the plaintiff's product or service, and the extent to which the public identifies the name with the plaintiff's service.  Investacorp, 931 F.2d at 1525. Yet Plaintiff's Amended Complaint fails to allege that he possesses rights to an unregistered trademark, let alone to plead facts relating to these factors.  See DE 24. As such, Plaintiff fails to demonstrate that he has rights to an unregistered trademark. And Plaintiff does not claim that he owns rights to a registered trademark.  Therefore, he fails to allege that the first element of unfair competition (Count IV) and false designation of origin (Count VI) is satisfied.  See Custom Mfg., 508 F.3d at 647. Accordingly, even with the liberal construction afforded a *pro se* pleading, the Court finds that Plaintiff's Amended Complaint fails to state a claim for negligence, unfair competition, and false designation of origin.  The Court therefore dismisses these claims (Counts I, IV, and VI) with prejudice under Rule 12(b)(6).[9]

>    D.    Match Defendants Fail to Show Deficiencies in Plaintiff's Allegations of
>           Vicarious Liability

In his Amended Complaint, Plaintiff alleges that Match Defendants are vicariously liable under a theory of respondeat superior.  DE 24 at 16, 20.  In his Response, Plaintiff asserts that he seeks to hold Match Defendants liable for their employees' conduct while acting within the scope of employment.  DE 29 at 5.  To

---

[9] Plaintiff nowhere seeks leave to amend his Amended Complaint to cure his pleading deficiencies.  He was previously able to cure these deficiencies by amending his original Complaint with leave of the Court. See DE 23.  As such, the Court finds that dismissal of these claims (Counts I, IV, and VI) with prejudice is warranted.  See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (explaining that "a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice").

demonstrate the employees' conduct, Plaintiff attached an exhibit to his Amended Complaint showing online communication between the employees and Plaintiff.  DE 24 at 61–67.

Match Defendants argue that Plaintiff insufficiently bases his theory of vicarious liability on the alleged parent-subsidiary relationship between Match Group, Inc. and Tinder, Inc.  DE 25 at 12, 13.  In support of this argument, Match Defendants rely on case law regarding direct and contributory infringement, a vicarious liability theory that derives from respondeat superior.  See id.  But Plaintiff's Amended Complaint nowhere suggests that he invokes direct or contributory infringement or the alleged parent-subsidiary relationship to show vicarious liability.  Rather, Plaintiff alleges respondeat superior based on the asserted employer-employee relationship between Match Defendants and its employees.  DE 24 at 16, 20.  Because Match Defendants do not challenge the elements of respondeat superior, they fail to show that dismissal is warranted on this ground.

   E.   Plaintiff's Statutory and Common Law Misappropriation Claims Should Not be Dismissed Pursuant to the Communications Decency Act

Match Defendants also argue that the immunity granted through Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, bars their liability for all claims.  DE 25 at 8.  Section 230 of the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1). To achieve such immunity, a defendant must show that: "(1) it 'is a provider . . . of an interactive computer service; (2) the claim is based on information provided by another

information content provider; and (3) the claim would treat the defendant as the
publisher or speaker of that information.'" Doe v. Kik Interactive, Inc., 482 F. Supp. 3d
1242, 1248 (S.D. Fla. Aug. 31, 2020) (quoting Herrick v. Grindr, LLC, 765 F. App'x 586
(2d. Cir. 2019)).

The first element of CDA immunity is met when a defendant provides an
"interactive computer service," meaning that the defendant "provides or enables
computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). As
Match Defendants operate the Tinder dating website and application, they satisfy this
requirement. See Beckman v. Match.com, No. 13-00097, 2013 WL 2355512, at *3 (D.
Nev. May 29, 2013) ("Match.com, as an operator of a website that allows people to join
and view other users' profiles, is an interactive services provider."); Cohen v. Facebook,
Inc., 252 F. Supp. 3d 140, 156–57 (E.D. N.Y. Jan. 25, 2018) (same with respect to
Facebook).

Match Defendants argue that they satisfy the second element of CDA immunity
because Does 1-100, not Match Defendants, allegedly posted content to the fake Tinder
account. DE 25 at 10. Specifically, Counts VII and VIII assert that "[t]he fake Tinder
account contains unauthorized data," such as "sexual and libelous content *disseminated
by Does 1 through 100*." DE 24 ¶¶ 34, 43 (emphasis added). Given that the account's
content was allegedly produced by those other than Match Defendants, the second
element of CDA immunity is met. See Dyroff v. Ultimate Software Grp., Inc., No. 17-
05359, 2017 WL 5665670, at *10 (N.D. Ca. Nov. 26, 2017) (finding that the website
owner did not create the online content at issue because "it is *the users' voluntary
inputs* that create the content") (emphasis added).

Finally, Match Defendants contend that the third element of CDA immunity is satisfied because Counts VII and VIII seek to treat Match Defendants as the publisher of the alleged Tinder content.  DE 25 at 12.  A defendant acts as a publisher when it "decid[es] whether to publish, withdraw, postpone or alter content."  Dowbenko v. Google Inc., 582 F. App'x, 801, 805 (11th Cir. 2014).  Counts VII and VIII allege that Match Defendants "published Plaintiff Alberts' images, private activities, likeness, voice and/or identity on . . . Tinder social media channels."  Id. at ¶ 93.  Such allegation falls squarely within the third element of CDA immunity.  See Grindr, 765 F. App'x at 590–91 (affirming that Grindr met the third element of CDA immunity when it published content to a fake dating account).  Accordingly, Match Defendants satisfy the three elements of CDA immunity.

Plaintiff argues, however, that Match Defendants are excluded from immunity based on the CDA's intellectual property exception.  DE 29 at 3, 4.  This exception bars a grant of immunity for "any law pertaining to intellectual property."  47 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."); see Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1322 (11th Cir. 2006) ("[F]ederal district courts have held that § 230(e)(2) unambiguously precludes applying the CDA to immunize interactive service providers from [intellectual property] claims.").  In their Reply, Match Defendants contend that Plaintiff's misappropriation of name and likeness claims (Counts VII and VIII) only nominally involve intellectual property but "[do not] actually involve[] intellectual property."  DE 32 at 5.  Yet these claims regard Plaintiff's right of publicity.  See Almeida, 456 F.3d at 1318 (explaining that misappropriation of likeness claims under

the common law and Fla. Stat. § 540.08 are right of publicity claims).  And the Eleventh

Circuit has expressly established that the right of publicity is an intellectual property

right.  Id. at 1322 ("[T]he right of publicity is a type of intellectual property right.").  As

Plaintiff's statutory and common law misappropriation claims pertain to intellectual

property, the Court finds that the intellectual property exception to the CDA's grant of

immunity applies with respect to Plaintiff's misappropriation claims.

The Court notes, though, that the Eleventh Circuit has left open whether the

intellectual property exception applies to CDA immunity for *state law* intellectual

property claims, such as Plaintiff's misappropriation claim under Fla. Stat. § 540.08

(Count VII).  See Almeida, 456 F.3d at 1324 (finding that the plaintiff's state law right of

publicity claim would not survive a motion to dismiss and thus application of the CDA

intellectual property exception need not be addressed); Evans v. Wurkin Stiffs, Inc., No.

15-61934, 2016 WL 8793339, at *8 (S.D. Fla. Mar. 21, 2016) ("The Eleventh Circuit has

not decided whether the CDA immunizes an interactive service provider from a state

law right of publicity claim.").  Match Defendants do not challenge application of the

intellectual property exception to Count VII on this ground.  At this juncture, the Court

finds persuasive the reasoning of other jurisdictions that have applied the CDA

intellectual property exception to state law claims, barring immunity from those claims.

See Universal Communication Systems, Inc. v. Lycos, Inc., 478 F.3d 413 (1st Cir. 2007)

(applying the intellectual property exception to bar CDA immunity for a state law

trademark claim); Atlantic Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690

(S.D. N.Y. 2009) (same as to state law copyright infringement and unfair competition

claims).   Therefore, Plaintiff's statutory and common law misappropriation claims

(Counts VII and VIII) will not be dismissed pursuant to the CDA's grant of immunity.

      F.     <u>All Claims Against Tinder, Inc., a Non-Existent Entity, Are Dismissed</u>

Last, Match Defendants assert in their Motion that Defendant Tinder, Inc. is a

non-existent entity, following its merger with Defendant Match Group, LLC in 2017.  DE

25 at 1, n.1.  U.S. Securities and Exchange Commission (SEC) corporate records[10]

confirm the merger, which Plaintiff does not contest.  As Tinder, Inc. is non-existent, it

cannot be sued.  <u>See</u> <u>In re Berris</u>, No. 08-13940, 2009 WL 1139085, at *4 (S.D. Fla.

Apr. 27, 2009) ("[A]s [the defendant] is a non-existent entity, under Florida law, it has no

capacity to sue or be sued.").  Therefore, all claims against Tinder, Inc. (Counts VI, VII,

VIII, and IX) are dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants

Match Group, LLC and Match Group, Inc.'s Motion to Dismiss Complaint [DE 25] is

**GRANTED in part** as follows:

      1.     Plaintiff's claim under the Computer Fraud and Abuse Act (Count IX)

against Defendants Match Group, LLC and Match Group, Inc. is **DISMISSED without**

**prejudice** for lack of personal jurisdiction under Rule 12(b)(2).

      2.     Plaintiff's claims of negligence, false designation of origin, and unfair

competition (Counts I, IV, and VI) against Defendants Match Group, LLC and Match

---

[10] The Court takes judicial notice of the SEC corporate records that confirm the merger of Tinder, Inc. with Match Group, LLC.  <u>See</u> <u>Bryant v. Avado Brands</u>, 187 F.3d 1271, 1281 (11th Cir. 1999) ("[N]umerous courts have treated SEC documents as public records capable of being judicially noticed at the motion to dismiss stage.").  The records are available at
https://www.sec.gov/Archives/edgar/data/1575189/000110465917046540/a17-18264_1sc13d.htm.

Group, Inc. are **DISMISSED with prejudice** for failure to state a claim under Rule 12(b)(6).

      3.      Plaintiff's claims of statutory and common law misappropriation of likeness (Counts VII and VIII) against Defendants Match Group, LLC and Match Group, Inc. survive dismissal on all grounds.

      4.      All claims (Counts VI, VII, VIII, and IX) against Defendant Tinder, Inc. are **DISMISSED with prejudice** because the Defendant is a non-existent entity.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 4th day of August, 2022.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record and to *pro se* Plaintiff via CM/ECF